IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

JESUS P. GARZA                          §
     TDCJ-CID #1359254              §
                     §   C.A. NO. C-07-313
v.                                      §
                     §
WARDEN BRENDA CHANEY, ET AL§

**MEMORANDUM AND RECOMMENDATION**
**TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE**

This civil rights action was filed by a state prisoner pursuant to 42 U.S.C.

§ 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321

(1996), any prisoner action brought under federal law must be dismissed if the

complaint is frivolous, malicious, fails to state a claim upon which relief can be

granted, or seeks monetary relief from a defendant immune from such relief.  See

42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A.  Plaintiff's action is subject

to screening regardless whether he prepays the entire filing fee or proceeds as a

pauper.  Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam);

Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam).  Plaintiff's *pro se*

complaint must be read indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972),

and his allegations must be accepted as true, unless they are clearly irrational or

wholly incredible, Denton v. Hernandez, 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that plaintiff's Eighth Amendment claim against Dr. Jose A. Cornada be retained on the Court's docket, and service ordered on this defendant.  It is respectfully recommended further that plaintiff's remaining claims be dismissed for failure to state a claim and as frivolous.  28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1).

## I.  JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II.  FACTUAL ALLEGATIONS

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and is currently incarcerated at the Hamilton Unit in Bryan, Texas, although his claims concern events that occurred while he was at the Garza East Unit in Beeville, Texas.  He is suing Assistant Warden Mundy;[1] Jimmy Hernandez, who worked as plaintiff's immediate supervisor in the Maintenance Department; Mark Garza, who was the manager of the Maintenance Department; and Dr. Jose A. Cornada, a physician at the Garza East Unit.  (D.E. 1).

_____

[1] Originally, plaintiff named as a defendant the Garza East Unit's Senior Warden, Brenda Chaney.  However, prior to the evidentiary hearing, plaintiff filed motions to include an unnamed warden as a defendant.  (D.E. 7, 8).  At the August 2, 2007 hearing, plaintiff sought leave to  dismiss Warden Chaney and to substitute Assistant Warden Mundy.  It is respectfully recommended that Warden Chaney be dismissed as a defendant and that Assistant Warden Mundy be substituted as a defendant.

The following allegations were made in plaintiff's original complaint, or at the August 2, 2007 <u>Spears</u>[2] hearing.

On August 10, 2006, at approximately 9:00 a.m., plaintiff and Jimmy Hernandez were on the roof of one facility examining an exhaust fan to determine why it was running louder than usual.  Plaintiff and Mr. Hernandez took the motor guard off the fan, and then Mr. Hernandez went to the other side of the roof to turn the motor off.  Once the fan blades began to slow down, at approximately 9:20 a.m., plaintiff put his hand inside the unit to check the fan belt, believing he could stop it altogether now that the motor was off and it was slowing down.  However, there was still considerable motor torque left, and his left index finger was pulled into the pulley and severed above the second knuckle.  The slice was to the bone, but the finger remained attached on one side.  Plaintiff immediately called Mr. Hernandez for help.

Mr. Hernandez took plaintiff to the infirmary where he arrived at approximately 9:30 a.m.  Plaintiff waited approximately forty-five minutes until he was seen by Dr. Cornada, who told him that there was nothing he could do for his injury, and that he would have to go to the Beeville Emergency Room ("ER").

---

[2] <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985).

Plaintiff again waited until he was "cleared" to take the five minute ride to the Beeville ER, where he arrived at approximately 11:00 a.m.  While waiting to be "cleared," he was never provided any ice for his finger or pain medication, and he had to ask for gauze to wrap around his finger.

Plaintiff was seen by a Beeville ER doctor who told him that he was not able to reattach his finger and that he must instead go to John Sealy Hospital in Galveston for such a procedure.  At 11:45 a.m., the ER doctor called the Garza East Unit to get permission to send plaintiff to John Sealy Hospital; however, it was not until 4:00 p.m. that someone from the prison returned the doctor's call and authorized plaintiff's trip to Galveston.

Before setting out to Galveston, the transporting officers returned to the prison because a shift change occurred at 5:00 p.m.  Plaintiff remained sitting in the van from 4:00 to 6:00 p.m. without any ice for his finger, any pain medication, or any medical personnel checking on his condition.  After the shift change, the van driver stopped to fill-up the van with gasoline.  Plaintiff arrived at John Sealy Hospital at approximately 10:00 p.m.  At 10:45 p.m., plaintiff was seen by a physician who indicated that he would attempt to reattach his finger.  However, plaintiff was later advised that the supervising physician had decided that the severed portion of plaintiff's finger must be amputated due to the length of time

that had passed since the injury, and the fact that the severed portion had not been kept packed in ice.  At approximately 4:00 a.m. on August 11, 2006, the severed tip was amputated.

Plaintiff filed this lawsuit on July 16, 2007.  He is suing defendants in their individual capacities only, for compensatory and punitive damages.

### III. <u>DISCUSSION</u>

**A.    Legal Standard.**

Plaintiff's action may be dismissed for failure to state a claim upon which relief can be granted despite his failure to exhaust administrative remedies.  42 U.S.C. § 1997e(c)(2).  The Supreme Court has held that "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988) (citations omitted); <u>accord</u> <u>Biliski v. Harborth</u>, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam).  An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief.  <u>Oliver v. Scott</u>, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted).  The complaint must be liberally construed in favor of the prisoner, and the truth of all pleaded facts must be assumed.  <u>Id.</u>

**B.      Deliberate Indifference.**

Plaintiff alleges that defendants were deliberately indifferent to his health and safety.  He claims that his immediate work supervisor, Jimmy Hernandez, failed to provide a safe work environment, and that Mark Garza, the Maintenance Department supervisor, failed to train and supervise his subordinates.  He claims that Assistant Warden Mundy was deliberately indifferent to his serious medical needs because he was in charge of "clearing" him to go to the Beeville ER and Galveston Hospital, and therefore, he was responsible for the unnecessary delay.  Finally, plaintiff claims that Dr. Cornada was deliberately indifferent to his serious medical needs because he examined his finger immediately after the accident, but failed to perform even the most basic first-aid to attempt to save his finger, or to address his pain.

The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates."  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation omitted).  A prison official violates this duty when by act or omission he is deliberately indifferent to prison conditions which pose a substantial risk of serious harm.  Id. at 834.  The Fifth Circuit has

6

explained that "[t]o establish deliberate indifference in the context of the Eighth Amendment, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998) (citation omitted); see also Farmer, 511 U.S. at 837 (holding that the subjective test for deliberate indifference requires the official both know of and disregard an excessive risk of harm). The legal conclusion of deliberate indifference must rest on facts clearing evincing "obduracy and wantonness, not inadvertence or error in good faith." Whitley v. Albers, 475 U.S. 312, 319 (1986); accord Bradley, 157 F.3d at 1025 (quoting Whitley).

### 1.    Plaintiff's Claim Against Jimmy Hernandez.

Plaintiff claims that his immediate supervisor, Jimmy Hernandez, was deliberately indifferent to his health and safety because he knowingly left him exposed to moving mechanical parts when he left him alone on one side of the roof and went to turn off the fan motor. (D.E. 1, at 3). However, at the evidentiary hearing, plaintiff admitted that he did not ask Mr. Hernandez to stay with him as he attempted to slow the fan belt down. In addition, Mr. Hernandez did not order plaintiff to put his hand into the fan motor to repair it. Indeed, plaintiff testified

that he believed the engine had slowed down enough so that he could stop the belt with his hand, and he alone made the decision to attempt to stop the belt in that manner.

In addition, plaintiff testified that he had worked in the maintenance department for approximately eight months, and he admitted that, during that time, he had not complained to Mr. Hernandez that the work was overly dangerous.  He had not sought a transfer, requested additional training, nor additional supervision. After he was injured, Mr. Hernandez took plaintiff to the infirmary immediately.

Plaintiff fails to allege any facts to suggest that Mr. Hernandez willfully overlooked the condition of the fan, or knew of a substantial risk to plaintiff's health and safety and ignored that risk.  See Bradley, 157 F.3d at 1025.  In fact, it appears that plaintiff created the risk himself by placing his finger in the motor before it had come to a complete stop.  He was not forced to do so.  Plaintiff fails to state a claim of deliberate indifference against Mr. Hernandez, and it is respectfully recommended that this claim be dismissed for failure to state a claim and as frivolous.

### 2.    Plaintiff's Claim Against Mark Garza.

Plaintiff claims that the Maintenance Department Supervisor, Mark Garza, should be held liable for his injuries for failure to train his employees.  He claims

that Mr. Garza should have watched the inmates more carefully and given the supervisors more monthly safety tips.

To state a cause of action under § 1983, plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged.  Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995); Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).  A supervisory official may not be held liable under § 1983 based on a theory of *respondeat superior* or vicarious liability.  Reimer v. Smith, 663 F.2d 1316, 1323 (5th Cir. 1981).  A supervisory defendant must be either personally involved in the incidents underlying the claim "or there must be a causal connection between an act of the [supervisor] and the constitutional violation sought to be redressed."  Harvey v. Andrist, 754 F.2d 569, 572 (5th Cir. 1985) (citations omitted); see also Hinshaw v. Doffer, 785 F.2d 1260, 1263 (5th Cir. 1986) (citation omitted) (usually a failure to supervise imposes § 1983 liability only where there is a history of widespread deprivations).

Plaintiff admitted at the evidentiary hearing that Mr. Garza was not on the roof the day his hand got caught in the exhaust fan.  He offers no evidence of personal involvement by Mr. Garza.  Moreover, he admitted that he had never personally complained to Mr. Garza regarding lack of training for himself or his

9

supervisors, nor had he requested greater supervision on the job.  Until the August 10, 2006 accident actually occurred, plaintiff himself was not aware of any increased risk to his health and safety by working in the maintenance department. He offers no facts to suggest that Mr. Garza was aware of an increased risk, yet failed to take measures to protect plaintiff from that risk.  See Bradley, 157 F.3d at 1025.  As such, plaintiff fails to state a claim against Mark Garza, and it is respectfully recommended that plaintiff's claim against this defendant be dismissed for failure to state a claim and as frivolous.

### 3.    Plaintiff's Claim Against Dr. Cornada.

Plaintiff claims that Dr. Cornada was deliberately indifferent to his serious medical needs because he failed to render any medical treatment at the Garza prison, but instead, transferred him to the Beeville ER.

As the Supreme Court has explained "[d]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  Estelle v. Gamble, 429 U.S. 97, 105 (1976); see also Wilson v. Seiter, 501 U.S. 294, 303 (1991); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (per curiam) (citation omitted).  In order to state a claim of inadequate medical treatment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle, 429 U.S. at 106.

10

Negligent medical care does not constitute a valid § 1983 claim.  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); see also Graves v. Hampton, 1 F.3d 315, 319 (5th Cir. 1993) ("It is firmly established that negligent or erroneous medical treatment or judgment does not implicate the eighth amendment and does not provide the basis for a civil rights action.").  As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights.  See Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982).  Moreover, active treatment of a prisoner's serious medical condition does not constitute deliberate indifference, even if treatment is negligently administered.  See Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999); Mendoza, 989 F.2d at 195; Varnado, 920 F.2d at 321.  "Deliberate indifference is an extremely high standard to meet."  Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

An incorrect diagnosis does not state an Eighth Amendment claim because the deliberate indifference standard has not been met.  Domino, 239 F.3d 752, 756 (5th Cir. 2001) (quoting Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985)).  A "plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"  Id.

11

(quoting <u>Johnson</u>, 759 F.2d at 1238).  However, delay in treatment may be actionable under § 1983 if there has been deliberate indifference and the delay results in substantial harm.  <u>Mendoza</u>, 989 F.2d at 195; <u>see</u> <u>also</u> <u>Stewart</u>, 174 F.3d at 537 (no evidence of substantial delay).

Plaintiff testified that, even though he was taken to the Garza East Unit emergency room, it took Dr. Cornada forty-five minutes before he looked at his finger, then he told him that he could do nothing to help him.  Plaintiff was then required to wait again until he was transferred to the Beeville emergency room.  Dr. Cornada did not prescribe him any pain medication, or give him any ice to hold on his finger.  Plaintiff himself had to ask for gauze to wrap around his wound.  When he was finally transported to John Sealy Hospital, he was advised by doctors there that, had his finger been kept iced, it might have been saved.  Given the facts as presented by plaintiff, he has stated a claim of deliberate indifference against Dr. Cornada for purposes of § 1915A screening.  It is respectfully recommended that the Court retain this claim and order service on this defendant.

**4.     Plaintiff's Claim Against Assistant Warden Mundy.**

Plaintiff claims that Assistant Warden Mundy was the "acting warden," and therefore, the person in charge of the Garza East Unit at the time of his accident, such that he should be held liable for the delays in having him transported between

hospitals, and therefore, for his damages.

As previously discussed, § 1983 does not create supervisory or *respondeat superior* liability.  Oliver, 276 F.3d at 742.  Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983.  Id. at 742 n.6 (citing Alton v. Tex. A&M Univ., 168 F.3d 196, 200 (5th Cir. 1999)).  Supervisory officials may be held liable only if they (1) affirmatively participate in acts that cause the constitutional deprivation or (2) implement unconstitutional policies that causally result in plaintiff's injury.  Id. at 742.

Plaintiff does not claim that Assistant Warden Mundy participated directly in the deprivation of a constitutional right, nor does he suggest that Assistant Warden Mundy implemented any unconstitutional policy.  He seeks to hold Assistant Warden Mundy liable simply by virtue of his position as acting warden at the time of the accident, a claim that is not cognizable under § 1983.  Indeed, "[t]here is no evidence indicating that the warden *knew* that [plaintiff] was in need of immediate surgery or that a delay in treatment was likely to lead to serious medical consequences."  Shafer v. Carmona, 71 Fed. Appx. 350, 354 (5th Cir. Aug. 11, 2003) (per curiam) (unpublished) (holding that inmate failed to establish that warden was deliberately indifferent to his serious medical needs).  Moreover, as

13

acting warden, it was reasonable for Assistant Warden Mundy to rely on the medical department to handle the medical needs of the inmates.  See Johnson v. Johnson, 385 F.3d 503, 526 (5th Cir. 2004) ("given the size of the operation [supervisory defendants] oversee, they cannot be expected to intervene personally in response to every inmate letter they receive").  Accordingly, it is respectfully recommended that plaintiff's claim against Assistant Warden Mundy be dismissed with prejudice for failure to state a claim and as frivolous.

## IV.  RECOMMENDATION

For the reasons stated above, it is respectfully recommended pursuant to plaintiff's oral motion that Warden Chaney be dismissed as a defendant and that Assistant Warden Mundy be substituted as a defendant.  Moreover, it is respectfully recommended that plaintiff's Eighth Amendment claim of deliberate indifference to serious medical needs against Dr. Cornada be retained and service ordered on this defendant.  Finally, it is respectfully recommended that plaintiff's remaining claims against the remaining defendants be dismissed with prejudice for failure to state a claim and as frivolous.  28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1).

Respectfully submitted this 24th day of August 2007.

_____

BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

14

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).