IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JESUS P. GARZA § | | |
|     TDCJ-CID #1359254 § | | |
| v. § | | C.A. NO. C-07-313 |
| § | | |
| BRENDA CHANEY, ET AL. § | | |

**MEMORANDUM AND RECOMMENDATION**
**TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This civil rights action was filed by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff was an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), but was released on parole in August 2007. (D.E. 13, 14, 16, 17).

Plaintiff alleged that while he was incarcerated at the Garza East Unit in Beeville, Texas, several defendants violated his Eighth Amendment rights by failing to prevent an injury to his finger, and by not providing prompt medical care. (D.E. 1). On August 24, 2007, it was recommended that plaintiff's claims against defendant Dr. Jose Coronado in his personal capacity be retained, and the remaining claims dismissed. (D.E. 15).[1] On December 13, 2007, this recommendation was adopted. (D.E. 21). On March 13, 2008, defendant filed a

---

[1] Dr. Coronado's name had been previously spelled as Dr. Cornada, but the records provided with the motion for summary judgment establish that Dr. Coronado is the proper spelling.

motion for summary judgment.  (D.E. 29).  Plaintiff has not responded.[2]  For the following reasons, it is respectfully recommended that defendant's motion for summary judgment be granted.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. FACTUAL ALLEGATIONS AND BACKGROUND

The following allegations were made in plaintiff's original complaint, or at the August 2, 2007 Spears[3] hearing.  On August 10, 2006, at approximately 9:00 a.m., plaintiff and his supervisor, Jimmy Hernandez, were investigating an unusually loud exhaust fan on the roof of a building at Garza East Unit.  Plaintiff and Mr. Hernandez took the motor guard off the fan, and Mr. Hernandez turned the motor off.  Plaintiff then put his hand inside the unit to stop the fan's rotation.  However, there was still considerable motor torque, and his left index finger became caught in a pulley.  His finger was cut to the bone above the second knuckle, nearly severing it.

---

[2] Pursuant to Local Rule 7.4, "[f]ailure to respond will be taken as a representation of no opposition."

[3] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).

Mr. Hernandez and plaintiff arrived at the infirmary at approximately 9:30 a.m. Nurse Annette Gomez[4] performed an initial examination. Plaintiff then waited approximately forty-five minutes for Dr. Coronado to arrive. After examining the finger, Dr. Coronado told plaintiff that he would have to go to the Beeville Hospital emergency room because he could not effectively treat the wound at Garza East Unit. However, plaintiff could not leave without permission from Assistant Warden Mundy. Dr. Coronado did not provide ice for his finger during the approximately thirty minute wait. Plaintiff asked for, and was provided, gauze to wrap around his finger. He arrived at the emergency room at approximately 11:00 a.m, after a five-minute ride.

A doctor at the Beeville Hospital emergency room examined plaintiff and told him that he would have to go to John Sealy Hospital in Galveston for reattachment surgery. At 11:45 a.m., the emergency room doctor called the Garza East Unit to get permission to send plaintiff to John Sealy Hospital. However, it was not until 4:00 p.m. that a prison official returned the doctor's call and authorized a trip to Galveston.

The transporting officers first returned to Garza East Unit, because a shift

---

[4] Defendant refers to "Nurse Annette Pickford" in his motion for summary judgment, (D.E. 29, at 9), but this does not match the signature on the examination form. Id., Ex. B, at 13.

3

change occurred at 5:00 p.m. Plaintiff waited in the van from 4:00 p.m. to 6:00 p.m. without any ice for his finger, any pain medication, or any other medical attention. Plaintiff arrived at John Sealy Hospital at approximately 10:00 p.m. At 10:45 p.m., he was seen by a physician who indicated that he would attempt to reattach his finger. However, plaintiff was later advised that the supervising physician had decided that the severed portion of his finger must be amputated due to the length of time that had passed since the injury, and the fact that the digit had not been kept packed in ice. At approximately 4:00 a.m. on August 11, 2006, doctors amputated the tip of plaintiff's left index finger. See (D.E. 17, at 2) (picture of plaintiff's hand's with portion of his left index finger missing).

Plaintiff filed this lawsuit on July 16, 2007. In his complaint, or at the Spears hearing, plaintiff claimed (1) that his immediate work supervisor, Jimmy Hernandez, failed to provide a safe work environment; (2) that Mark Garza, the Maintenance Department supervisor, failed to train and supervise his subordinates; (3) that Assistant Warden Mundy was deliberately indifferent to his serious medical needs because he caused delay by failing to immediately clear plaintiff to travel to the Beeville Hospital emergency room and to the Galveston hospital; and (4) that Dr. Coronado was deliberately indifferent to his serious medical needs because he failed to perform even the most basic first-aid to attempt to save his

finger, or to adequately train Nurse Gomez to do so. Plaintiff sought damages against defendants in their personal capacities only.

On August 24, 2007, it was recommended that the Court retain his claims against Dr. Coronado, and dismiss the other claims. (D.E. 15). This Court adopted the recommendation on December 13, 2007. (D.E. 21). On March 13, 2008, defendant moved for summary judgment on qualified immunity grounds, and because plaintiff's claims are unexhausted and without merit. (D.E. 29). Defendant has produced a business records affidavit from the grievance records custodian for the TDCJ stating that petitioner filed only one Step 1 grievance between July 2006 and May 1, 2007.

### III. DISCUSSION

**A.     Summary Judgment Standard of Review.**

Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Courts must consider the record as a whole, considering all pleadings, depositions, affidavits, and admissions on file in the light most favorable to the non-movant. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings,

depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988). Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991). The non-movant cannot merely rest on the allegations of the pleadings, but must establish that material controverted facts preclude summary judgment. Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof. Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

**B.     Exhaustion of Administrative Remedies.**

The Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to *all* inmate suits about prison life, whether involving general circumstances or specific incidents.  Porter v. Nussle, 534 U.S. 516, 524 (2002); Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002). Moreover, a prisoner is required to exhaust his administrative remedies even if monetary damages are unavailable through the grievance process.  Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).  However, the exhaustion requirement is not jurisdictional. Underwood v. Wilson, 151 F.3d 292, 294-95 (5th Cir. 1998) (per curiam).  The Fifth Circuit has explained that the exhaustion requirement "may be subject to certain defenses such as waiver, estoppel, or equitable tolling."  Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998) (citation omitted); accord Days v. Johnson, 322 F.3d 863, 866 (5th Cir. 2003) (per curiam).

A prisoner must complete the administrative review process in accordance

with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2382, 2387 (2006). Untimely grievances do not satisfy the exhaustion requirement. Trevino v. Herrera, 61 Fed. Appx. 922, 2003 WL 1107319, at *1 (5th Cir. Feb. 20, 2003) (per curiam) (unpublished) (citing Richardson v. Spurlock, 260 F.3d 495, 499 (5th Cir. 2001); Wright, 260 F.3d at 358; Harper v. Jenkin, 179 F.3d 1311 (11th Cir. 1999)); see also Johnson v. Ford, No. 06-41082, 2008 WL 118365, at *2-4 (5th Cir. Jan. 14, 2008) (per curiam) (unpublished) (post-Ngo holding that an untimely filed grievance was not excused). The Fifth Circuit has explained that allowing untimely grievances to satisfy the PLRA's exhaustion requirement would enable inmates to evade the exhaustion requirement altogether by failing to comply with a prison's grievance procedures. Days, 322 F.3d at 867-68 (citations omitted).

**C.    Plaintiff Has Not Exhausted His Administrative Remedies**.

To properly exhaust administrative remedies, Texas inmates must follow the Texas Department of Criminal Justice's two-step procedure for presenting administrative grievances. See Wendell, 162 F.3d at 891. A Step 1 grievance must be filed within fifteen days of the alleged incident or challenged event, and is reviewed within the prisoner's facility. See Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004). If an inmate receives an adverse response to his Step 1 grievance,

8

he then has up to ten days to file a Step 2 grievance, which is reviewed at the state level.  See id.; Wendell, 162 F.3d at 891.  A prisoner must pursue a grievance through both steps of the administrative review process for it to be considered exhausted.  See Wright, 260 F.3d at 358; accord Johnson, 385 F.3d at 515.

Plaintiff filed a Step 1 grievance on April 25, 2007, more than six months after he was injured.  (D.E. 1, at 6).  He does not dispute that his grievance was untimely filed.  Instead, he asks the Court to excuse his failure to exhaust, explaining that (1) a law library staff member at the Garza East Unit told him that he had two years to file a lawsuit, but never explained that it was necessary to file the grievances; (2) the warden at the Garza East Unit was harassing him, so he decided to wait until after he was transferred; and (3) the time to file a grievance had expired when he returned from the hospital in Galveston.  Id. at 4.  Finally, in the Step 1 grievance, plaintiff explained that he informally addressed his grievance with several different individuals in either late August 2006, or early September 2006.  Id. at 6.

Failure to exhaust may be excused when grievance officials "ignore or interfere with a prisoner's pursuit of relief."  Thomas v. Prator, 172 Fed. Appx. 602, 603 (5th Cir. 2006) (per curiam) (unpublished) (citing Holloway v. Gunnell, 685 F.2d 150, 154 (5th Cir. 1982)).  However, plaintiff alleges merely that the

librarian failed to explain the PLRA's exhaustion requirement.  This does not amount to affirmative misrepresentation, and "ignorance of the law will not relieve [plaintiff] of his obligation to exhaust the available administrative remedies."  Castro v. Crawfoot, 102 Fed. Appx. 852, 854 (5th Cir. 2005) (per curiam) (unpublished) (citing Fisher v. Johnson, 174 F.3d 710, 712-14 (5th Cir. 1999)).

Plaintiff's allegations of harassment are conclusory, and completely unsupported.  He has not offered any evidence that Warden Chaney initiated a disciplinary case against him, much less that she did so to retaliate against him, or harass him.  Indeed, he has not even responded to defendant's motion for summary judgment with an affidavit explaining the factual basis for his fear that prison officials would "make [his] time hard and cause him to lose [his] line class and good time."  (D.E. 1, at 4).  Finally, plaintiff's claim that the time for filing a grievance had elapsed when he returned to the Garza East Unit the day after his injury is clearly an incorrect statement of TDCJ grievance policy.  (D.E. 1, at 4); see also Johnson, 385 F.3d at 515 (inmates have fifteen days from an incident to file a Step 1 grievance).

In Days, the plaintiff fell and broke his hand.  322 F.3d at 864.  Because of the accident, he could not write with his broken hand and thus did not file a timely grievance.  Id. at 865.  Instead, he filed his grievance after his hand healed.  Id.

However, that grievance was returned to him unprocessed as untimely. Id. The Fifth Circuit found that "[t]he facts as alleged by Days indicated that his injury actually prevented him from timely filing a grievance." Id. at 867. Consequently, the Days court held that he "sufficiently alleged that, prior to filing the instant § 1983 suit, he exhausted the administrative remedies that were personally available to him." Id.

 Plaintiff's situation is distinguished from that addressed in Days. Interestingly, plaintiff does not allege that he could not exhaust his administrative remedies because of the injury to his finger. The injury was to plaintiff's left index finger, but the record does not establish which hand he uses to write. Moreover, although he informally raised his grievance with several prison officials in either late August 2006 or early September 2006, he unexplainedly waited over five months – April 25, 2007 – to file his Step 1 grievance. Accordingly, it is respectfully recommended that plaintiff has not shown that a genuine issue of fact exists as to whether the untimely filing of his grievance should be excused.

 Plaintiff's arguments concerning excusable neglect notwithstanding, his failure to properly exhaust cannot be excused because his untimely grievance did not even address his claims against Dr. Coronado. A grievance should be considered sufficient to the extent it gives officials a fair opportunity to address the

11

problem that may later form the basis of a lawsuit.  <u>Johnson</u>, 385 F.3d at 517-18; <u>see</u> <u>also</u> <u>Porter</u>, 534 U.S. at 525 (a purpose of the exhaustion requirement is to create "an administrative record that clarifies the controversy") (citations omitted).

When plaintiff did file a grievance, he asserted only that TDCJ-CID caused his injury through deficient supervision at the time of his accident.  (D.E. 1, at 6).  He explained that, as required, he informally discussed the accident with several different individuals – a safety boss, the warden, and a maintenance supervisor – in either late August 2006, or early September 2006.  <u>Id.</u>   He did not attempt to informally resolve his grievance by discussing his concerns with anyone in the medical department.  <u>Cf.</u> <u>Johnson</u>, 385 F.3d at 523 (plaintiff could have identified Dr. Coronado by a description of job function).  More important, his Step 1 grievance does not mention Dr. Coronado's role in the events.  The primary purpose of plaintiff's grievances would be to notify prison officials of the problem plaintiff had with his medical treatment by defendant.  <u>Id.</u> at 522.  Indeed, he did not complain about the quality of his medical care at all.  <u>See</u> <u>Williams v. Castro</u>, Civil No. CC-06-437, 2008 WL 447701, at *2 (S.D. Tex. Feb. 18, 2008) (unpublished) (excusing failure to exhaust is inappropriate where plaintiff's claim was based on denial of medical care and "[plaintiff's] grievances do not mention medical care at all"); <u>see also</u> <u>Rand v. Simonds</u>, 422 F. Supp.2d 318, (D.N.H.

2006) (plaintiff failed to exhaust a medical indifference claim where the grievance "did not allege any misfeasance on Simond's part, or even mention him, by name or otherwise"). Accordingly, it is respectfully recommended that plaintiff has not properly exhausted his claims.

**D.     Defendant Is Entitled To Qualified Immunity.**

Defendant also moves for summary judgment on the grounds of qualified immunity. The threshold question in a qualified immunity analysis is "'whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.'" Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003) (quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)); accord Saucier v. Katz, 533 U.S. 194, 201 (2001). If a constitutional violation is alleged, the Court must next determine "whether the right was clearly established–that is whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Mace, 333 F.3d at 624 (quoting Price, 256 F.3d at 369). Once a defendant has invoked the defense of qualified immunity, the burden shifts to the plaintiff to show that the defense is inapplicable. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

### 1. Step 1: Constitutional Violation.

The Supreme Court has explained that "[d]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle v. Gamble, 429 U.S. 97, 105 (1976); see also Wilson v. Seiter, 501 U.S. 294, 303 (1991); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (per curiam) (citation omitted). The Fifth Circuit has explained that "[d]eliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). A "plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Id. (quoting Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Merely negligent medical care does not constitute a valid § 1983 claim. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); see also Graves v. Hampton, 1 F.3d 315, 319 (5th Cir. 1993) ("It is firmly established that negligent or mistaken medical treatment or judgment does not implicate the eighth amendment and does not provide the basis for a civil rights action."). As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. See Youngberg v. Romeo, 457

U.S. 307, 322-23 (1982). Moreover, active treatment of a prisoner's serious medical condition does not constitute deliberate indifference, even if treatment is negligently administered. See Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999); Mendoza, 989 F.2d at 195; Varnado, 920 F.2d at 321. However, delay in treatment may be actionable under § 1983 if there has been deliberate indifference and the delay results in substantial harm. Mendoza, 989 F.2d at 195; see also Stewart, 174 F.3d at 537 (no evidence of substantial delay).

In his complaint, plaintiff alleged that Dr. Coronado told him that there was nothing he could do for his finger. (D.E. 1, at 8). He then waited an hour for permission to travel to the Beeville Hospital emergency room. Id. He stayed there until 4:00 p.m., when he was taken back to the Garza East Unit. Id. at 9. The Beeville Hospital made no effort to save his finger. Id. At 6:00 p.m., he left the Garza East Unit for Galveston Hospital, arriving around 10:30 p.m. Id. A doctor there told him that amputation was necessary because the wound had been exposed for so long and not "iced down." Id.

At the Spears hearing, plaintiff testified that Dr. Coronado did not examine his finger until forty-five minutes after he arrived in the Garza East Infirmary. Another thirty minutes elapsed before plaintiff was cleared for transport. During this interval, Dr. Coronado did not prescribe him any pain medication, or give him

15

any ice to hold on his finger.  Plaintiff's wound was not bandaged until he asked for gauze to wrap around his wound.

For the purposes of § 1915A screening, plaintiff's allegations in his original complaint and at the Spears hearing were taken as true.  However, defendant has now come forward with uncontested summary judgment evidence refuting deliberate indifference to his medical needs.  See, e.g., Mathis v. Stevenson, C.A. No. C-05-523, 2007 WL 412190, at *5 (S.D. Tex. Feb. 1, 2007) (unpublished); see also Mace, 333 F.3d at 624 n.7 ("it is well established that a nonmovant cannot overcome summary judgment with conclusory allegations and unsubstantiated assertions").

In his motion for summary judgment, defendant has produced records showing that plaintiff was examined by both Dr. Coronado and Nurse Gomez. (D.E. 29, Ex. B, at 5, 13).  These records show that plaintiff arrived in the infirmary at 9:50 a.m. and left between 10:30 a.m. and 10:47 a.m, after Dr. Coronado determined that plaintiff required emergency hospital care.  Id.  They also show that his wound was bandaged, and he was given Ibuprofin for his pain, before leaving the Garza East Unit.  Id. at 13.  Defendant also obtained an affidavit from Dr. Maximiliano Herrera explaining that icing is only indicated when a digit is severed, not lacerated.  Id., Ex. D.  Thus, defendant has established that he

treated plaintiff's wound, exercising professional judgment in a manner that was consistent with professional standards of medical care.

Plaintiff has not responded with evidence or argument to suggest that defendant's treatment was in any way substandard. See Bejaran v. Cruz, 79 Fed. Appx. 73, 74 (5th Cir. 2003) (unpublished) (per curiam) (no deliberate indifference where plaintiff was treated with "'generic,' 'mild medications'") (citing Estelle, 429 U.S. at 106). Furthermore, he does not allege that defendant had any reason to suspect that his treatment at Beeville and Galveston would be delayed, much less that defendant actually entertained any such suspicion. See Domino, 239 F.3d at 756 (deliberate indifference not shown by "failure to alleviate a significant risk that [the official] should have perceived, but did not") (citation omitted). Accordingly, it is respectfully recommended that defendant was not deliberately indifferent to plaintiff's medical needs.

Plaintiff also claims that defendant is legally responsible for Nurse Gomez's failure to immediately treat him, or transport him to the Beeville Hospital emergency room. However, he has not sued Nurse Gomez, and "doctors may not be held liable for § 1983 violations under a theory of respondent superior or vicarious liability, based upon claimed omissions by the nurses." Stewart, 174 F.3d at 536 (citations omitted). Accordingly, it is respectfully recommended that

Case 2:07-cv-00313   Document 30   Filed in TXSD on 05/09/08   Page 18 of 20

plaintiff has failed to state a claim against defendant in his personal capacity for any failure to train Nurse Gomez.

**2.     Step 2: Clearly Established Law.**

Step two of the qualified immunity analysis requires courts to determine whether the defendant's conduct "was objectively reasonable in light of clearly established law." Thompson v. Upshur County, Tex., 245 F.3d 447, 457 (5th Cir. 2001) (citations omitted). "Fair warning" is the central concept in this analysis. Bush v. Strain, 513 F.3d 492, 501-02 (5th Cir. 2008) (citations omitted). The Fifth Circuit has explained that "[t]he law can be clearly established 'despite notable factual distinctions between the precedents relied on..., so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" Kinney v. Weaver, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting Hope v. Pelzer, 536 U.S. 730, 740 (2002)). Thus, "when the defendant moves for summary judgment based on qualified immunity, it is the plaintiff's burden to demonstrate that all reasonable officials similarly situated would have then known that the alleged acts of the defendants violated the United States Constitution." Thompson, 245 F.3d at 457 (citation omitted).

Unlike § 1915A screening, plaintiff cannot rely merely on unsupported allegations to survive a motion for summary judgment. See Mathis, 2007 WL

412190, at *6; Mace, 333 F.3d at 624 n.7.  In failing to respond, plaintiff has not established that defendant refused to treat him, ignored his complaints, or intentionally treated him incorrectly.  See Domino, 239 F.3d at 756 (quoting Johnson, 759 F.2d at 1238).  He has likewise failed to establish any other basis for concluding that defendant acted with deliberate indifference to his medical needs.  Accordingly, it is respectfully recommended that defendant's actions were objectively reasonable in light of clearly established law.

## IV.  RECOMMENDATION

For the reasons stated above, it is respectfully recommended that defendant's motion for summary judgment, (D.E. 29), be granted.

Respectfully submitted this 9th day of May 2008.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).